UNITED STATES COURT OF INTERNATIONAL TRADE

_____

|                              |   |                     |
|------------------------------|---|---------------------|
| THE UNITED STATES,           | ) |                     |
|                              | ) |                     |
| Plaintiff,                   | ) |                     |
|                              | ) |                     |
| v.                           | ) | Court No.  16-00273 |
|                              | ) |                     |
| HARVIC INTERNATIONAL, LTD,   | ) |                     |
|                              | ) |                     |
| Defendant.                   | ) |                     |

_____

## **COMPLAINT**

The United States, through its undersigned attorneys, hereby brings this action and alleges the following:

1.      This is an action to recover a monetary civil penalty assessed pursuant to 19 U.S.C. § 1592(c) for violations of 19 U.S.C. § 1592(a).  This action is timely filed pursuant to a series of statute of limitations waivers executed by the defendant.

2.      This Court possesses exclusive jurisdiction to entertain this action pursuant to 28 U.S.C. § 1582.

3.      Upon information and belief, defendant Harvic International, Ltd. (Harvic), is a corporation incorporated under the laws of the State of New York, with a principal place of business at 10 West 33rd Street, Suite 508, New York, NY 10001-3306.  At all times relevant to the matters described in this complaint, Harvic was incorporated under the laws of the State of New York, had its principal place of business in the State of New York, and was engaged in the importation of wearing apparel.

4.      At all times relevant to the matters described in this complaint, Harvic's President was Henry A. Abadi.

5.      Between January 23, 2006, and September 25, 2007, Harvic entered, introduced, or caused to be entered and/or introduced into the commerce of the United States at the ports of Seattle, Washington, Los Angeles, California, New York, New York, and Philadelphia, Pennsylvania, approximately 57 entries of articles of wearing apparel manufactured in the People's Republic of China, by means of entry documents filed with U.S. Customs and Border Protection (CBP).  These entries are listed on Exhibit (Ex.) A, which is attached to this Complaint and incorporated by reference.

6.      Harvic entered and/or introduced the merchandise, described in paragraph 5, into the commerce of the United States by means of materially false documents, written statements, acts, and/or omissions, in violation of 19 U.S.C. § 1592.

7.      The documents, statements, acts, and/or omissions referenced in paragraph 6 were false because Harvic provided documentation to CBP representing that the subject merchandise originated from a country *other* than China.  Specifically, Harvic submitted to CBP bills of lading, entry summaries, and/or other entry documents falsely claiming that the articles of wearing apparel were instead manufactured in Bangladesh, Korea, and/or the Philippines.

8.      CBP's review of the entries in this case included a review of bills of lading obtained from the exporting carrier.  Pursuant to this review, CBP determined that all of the merchandise had been transshipped, under seal, from China to the United States through a third country.  The bills of lading provided by the exporting carrier clearly listed China or cities in China as the pier or place of receipt.

9.      The false documents, statements, acts, and/or omissions referenced in paragraphs 6 and 7 were material because they affected the enforcement of a quota on goods from China

classifiable under HTS 6204.63.3090.

10.     Specifically, in December 2005, the United States imposed a 12-month quota on the importation of textiles originating from China, covering January 1, 2006 to December 31, 2006. *Establishment of Agreed Import Levels and the ELVIS (Electronic Visa Information System) Requirement for Certain Cotton, Wool, Man-Made Fiber, Silk Blend and Other Vegetable Fiber Textiles and Textile Products Produced or Manufactured in the People's Republic of China,* 70 Fed. Reg. 74,777 (Dep't of Commerce Dec. 13, 2005).  This quota included merchandise under category 648, which covered women's or girl's synthetic fibers.  *Id.* In addition, on December 19, 2005, a directive published by CBP on its Quota Book Transmittals page of the CBP website, QBT-05-065, set forth the import restraint limits for various textile products from China, including category 648.

11.     In December 2006, the United States again imposed a 12-month quota (from January 1, 2007 to December 31, 2007) on the importation of textiles originating from China, including merchandise under category 648, which covered women's or girl's synthetic fibers. *Establishment of Agreed Import Levels for Certain Cotton, Wool, Man-Made Fiber, Silk Blend and Other Vegetable Fiber Textiles and Textile Products Produced or Manufactured in the People's Republic of China,* 71 Fed. Reg. 62,999 (Dep't of Commerce Oct. 23, 2006).  In addition, on October 27, 2006, a directive published by CBP on its Quota Book Transmittals page of the CBP website, QBT-06-030, set forth the import restraint limits for various textile products from China, including category 648.

12.     The purpose of the quotas addressed in QBT-05-065 and QBT-06-030 was to control the amount or volume of certain categories of merchandise imported from China into the

United States during a specified period of time.

13.     Merchandise listed under HTS 6204.63.3090 in 2006 and 2007 is listed under category 648, and thus is subject to a quota for textile products from China in 2006 and 2007.

14.     All 57 of Harvic's entries included articles of wearing apparel that were manufactured in China and subject to the quota prior to their importation into the United States.

15.     Harvic's false statements regarding the origin of the wearing apparel made it more difficult for CBP to enforce the applicable quota.  Because all of the merchandise was subject to the quota, Harvic's misrepresentation of the country of origin as other than China is material with respect to each entry.

16.     The dutiable value of the entries at issue in this case was $4,050,429.00.

17.     On or about October 28, 2009, CBP issued to Harvic three CBP Form 28, Requests for Information.  In the requests, CBP asked Harvic to provide documentation supporting the declared country of origin for the 57 entries of wearing apparel.  Harvic responded with a partial response in January 2010 but did not provide any information about the Philippines shipments.

18.     On April 12, 2010, CBP issued a pre-penalty notice, advising Harvic that it was contemplating issuing a 19 U.S.C. § 1592 penalty against it in the amount of $1,620,171.60, or 40 percent of the dutiable value of the merchandise, based on a culpability level of gross negligence.

19.     On or about July 7, 2010, Harvic responded to the pre-penalty notice.  Harvic argued that it was not at fault and should not be penalized even if CBP could prove that the merchandise originated in China.  Harvic claimed that it had documentation that supported the

declared countries of origin.  Harvic also claimed that it had asked its buying agent where the merchandise originated and that it visited the buying agent in Hong Kong to verify the agent's legitimacy.  Harvic also stated that it had examined the entry documentation and believed that it was authentic.

20.     On or about October 7, 2010, Harvic submitted a supplemental pre-penalty response.  In addition to reiterating its previous arguments and providing details about its allegedly excellent prior importing history, Harvic noted that it had also begun requiring factory visits, pictures, and videos.  In addition, Harvic had prepared a compliance manual and designated a Customs/Logistics manager.

21.     On November 17, 2010, CBP issued a notice of penalty in the amount of $405,042.90, or a 10 percent penalty, to Harvic for negligent violations of 19 U.S.C. § 1592. CBP explained that after receiving Harvic's submissions, it reduced the alleged culpability level from gross negligence to negligence.  CBP further explained that, with respect to the 57 entries, Harvic failed to exercise the degree of reasonable care and competence required when ensuring that the statements made and information provided in connection with the importation of its wearing apparel was complete and accurate.

22.     On or about February 25, 2011, Harvic submitted a response to the November 17, 2010 notice of penalty, in which it argued that the penalty should be canceled because Harvic was not negligent.  Harvic claimed that it did not fail to exercise reasonable care because it had specifically asked the buying agent where the goods originated.  Further, Harvic claimed that a penalty of over $400,000.00 would have a dire impact on the company's ability to operate.

23.     On or about March 15, 2011, the matter was referred to CBP's Office of

Regulations and Rulings (OR&R) for further consideration.  OR&R concluded that Harvic's

actions constituted negligence.  On May 13, 2011, OR&R issued its decision on Harvic's

petition, finding that Harvic violated 19 U.S.C. § 1592 by declaring Bangladesh, Korea and/or

the Philippines as the country of origin when the evidence indicated the apparel was

manufactured in China.  OR&R also found that Harvic made false statements by listing incorrect

manufacturers.   OR&R concluded that Harvic's failure to independently verify the country of

origin constituted negligence and declined to further mitigate the penalty.

24.     On February 9, 2012, CBP sent a demand letter for payment in the amount of

$405,042.90 to Harvic.  CBP sent three subsequent demands for payment.

25.     Harvic has not paid any part of the assessed penalty.

## COUNT I

26.     The allegations contained in paragraphs 1 through 25 are restated and

incorporated herein by reference.

27.     The material false statements described above in paragraphs 6 and 7 were

committed, submitted, made or caused by Harvic through its failure to exercise reasonable care

and competence to ensure that statements made and information provided in connection with the

importation of merchandise were complete and accurate, and, thus, constitute negligent

violations of 19 U.S.C. § 1592.

28.     As a result of the negligent violations of 19 U.S.C. § 1592 described above,

Harvic is liable to the United States, pursuant to 19 U.S.C. § 1592(c)(3)(B), for a penalty in the

amount of $405,042.90, which is an amount that does not exceed 20 percent of the dutiable value

of the merchandise.

29.     No part of the penalty has been paid, and Harvic remains liable and indebted to the United States for the penalty in the amount of $405,042.90, plus interest as provided by law.

WHEREFORE, the United States respectfully requests that the Court enter judgment for the United States against Harvic for a civil penalty in the amount of $405,042.90, plus interest and costs as provided by law, and for such other and further relief as this Court deems appropriate.

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

JEANNE E. DAVIDSON
Director

 /s/ Franklin E. White, Jr.   
FRANKLIN E. WHITE, JR.
Assistant Director

OF COUNSEL:

 /s/ Heidi L. Osterhout   
JENNIFER W. STILWELL                    HEIDI L. OSTERHOUT
Assistant Counsel                              Trial Attorney
Office of the Assistant Chief Counsel        Commercial Litigation Branch
U.S. Customs & Border Protection             Civil Division
1000 Second Avenue, Suite 2550               Department of Justice
Seattle, WA 98104                            P.O. Box 480
Jennifer.stilwell@dhs.gov                    Ben Franklin Station
Telephone: (206) 370-3774                    Washington, D.C. 20044
Facsimile: (206) 370-3847                    *heidi.l.osterhout@usdoj.gov*
                                             Telephone: (202) 616-0326
                                             Facsimile:  (202) 514-8640

December 28, 2016                            Attorneys for Plaintiff

EXHIBIT A

**EXHIBIT A**

| Entry Number | Entry Date | Value |
|---|---|---|
| 109/06635924 | 1/23/2006 | $50,400.00 |
| 109/06649560 | 1/31/2006 | $48,960.00 |
| 109/06683163 | 3/20/2006 | $49,680.00 |
| 109/06693394 | 3/21/2006 | $57,546.00 |
| 109/06697882 | 3/24/2006 | $54,720.00 |
| 109/06697890 | 3/24/2006 | $69,621.00 |
| 109/06722177 | 4/18/2006 | $75,240.00 |
| 109/06722193 | 4/18/2006 | $54,774.00 |
| 109/06722201 | 4/18/2006 | $51,048.00 |
| 109/06722219 | 4/18/2006 | $48,680.00 |
| 109/06727812 | 4/24/2006 | $54,495.00 |
| 109/06735781 | 4/28/2006 | $63,858.00 |
| 109/06735799 | 4/28/2006 | $111,300.00 |
| 109/06741177 | 5/5/2006 | $95,688.00 |
| 109/06741219 | 5/5/2006 | $94,606.00 |
| 109/06759617 | 5/22/2006 | $78,720.00 |
| 109/06759633 | 5/23/2006 | $71,918.00 |
| 109/06761233 | 5/23/2006 | $74,471.00 |
| 109/06761241 | 5/23/2006 | $98,971.00 |
| 109/06761258 | 5/23/2006 | $148,575.00 |
| 109/06761266 | 5/23/2006 | $72,150.00 |
| 109/06761274 | 5/23/2006 | $71,466.00 |
| 109/06765317 | 5/26/2006 | $77,207.00 |
| 109/06765671 | 5/26/2006 | $66,923.00 |
| 109/06765689 | 5/26/2006 | $71,805.00 |
| 109/06765697 | 5/26/2006 | $45,360.00 |
| 109/06772784 | 6/13/2006 | $59,022.00 |
| 109/06772792 | 6/13/2006 | $46,188.00 |
| 109/06772800 | 6/14/2006 | $59,463.00 |
| 109/06780548 | 6/2/2006 | $175,194.00 |
| 109/06791040 | 6/23/2006 | $85,788.00 |

| | | |
|---|---|---|
| 109/06808281 | 7/5/2006 | $76,388.00 |
| 109/06855530 | 8/9/2006 | $49,433.00 |
| 109/06855548 | 8/9/2006 | $49,433.00 |
| 109/06855555 | 8/9/2006 | $49,433.00 |
| 109/06855563 | 8/9/2006 | $49,433.00 |
| 109/06865828 | 8/23/2006 | $49,433.00 |
| 109/06866701 | 8/17/2006 | $49,433.00 |
| 109/07129927 | 4/18/2007 | $62,568.00 |
| 109/07129935 | 4/17/2007 | $59,532.00 |
| 109/07130008 | 4/17/2007 | $56,684.00 |
| 109/07133457 | 4/26/2007 | $106,050.00 |
| 109/07148018 | 5/4/2007 | $86,700.00 |
| 109/07151384 | 5/6/2007 | $71,952.00 |
| 109/07159403 | 5/18/2007 | $82,896.00 |
| 109/07159411 | 5/18/2007 | $89,178.00 |
| 109/07159494 | 5/19/2007 | $78,666.00 |
| 109/07159502 | 5/21/2007 | $54,008.00 |
| 109/07181209 | 6/4/2007 | $87,708.00 |
| 109/07181217 | 6/4/2007 | $55,470.00 |
| 109/07181241 | 6/4/2007 | $120,683.00 |
| 109/07181258 | 6/1/2007 | $65,460.00 |
| 109/07203540 | 6/20/2007 | $64,835.00 |
| 109/07203557 | 6/21/2007 | $56,992.00 |
| 109/07247778 | 7/30/2007 | $94,830.00 |
| 109/07314149 | 9/25/2007 | $54,162.00 |
| HSY/10235117 | 2/17/2006 | $45,232.00 |
| **TOTALS** | | **$4,050,429.00** |