Slip Op. 20-3

## UNITED STATES COURT OF INTERNATIONAL TRADE

| |
|---|
| UNITED STATES, |
| Plaintiff, |
| v. |
| HARVIC INTERNATIONAL, LTD., |
| Defendant. |

Before: Leo M. Gordon, Judge

Court No. 16-00273

### OPINION and ORDER

[Denying the parties' cross-motions for summary judgment.]

Dated: January 3, 2020

Mikki Cottet, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, D.C. for Plaintiff United States. On the brief with her were Joseph H. Hunt, Assistant Attorney General, Franklin E. White, Jr., Assistant Director. Of counsel on the brief was Jennifer W. Stilwell, Attorney, Office of the Associate Chief Counsel for U.S. Customs and Border Protection of Seattle, WA.

Michael T. Cone and Richard B. Cohen, FisherBroyles, LLP of New York, NY for Defendant Harvic International, Ltd.

Gordon, Judge: In this action, Plaintiff United States ("the Government") seeks to recover the maximum allowable civil penalty for a non-revenue-loss violation of Section 592 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1592 (2012),[1] stemming from entries of wearing apparel (the "subject merchandise"), allegedly transshipped from the People's Republic of China ("China") through Bangladesh, the Philippines, or Korea,

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

which Defendant Harvic International, Ltd. ("Harvic") entered into the commerce of the United States in 2006 and 2007. See Compl. ¶¶ 5–9, ECF No. 2. Before the court are the parties' cross-motions for summary judgment. See Harvic's Mot. for Summ. J., ECF No. 57 ("Def.'s MSJ"); Pl.'s Resp. in Opp'n to Harvic's Mot. for Summ. J. and Cross-Mot. for Summ. J., ECF No. 64 ("Pl.'s XMSJ"); see also Harvic's Combined Reply in Supp. of its Mot. for Summ. J. and Resp. in Opp'n to Pl.'s Cross-Mot. for Summ. J., ECF No. 75 ("Def.'s Reply"); Pl.'s Reply in Supp. of its Mot. for Summ. J., ECF No. 85 ("Pl.'s Reply"). The court has jurisdiction pursuant to 28 U.S.C. § 1582(1). For the reasons set forth below, the court denies the parties' cross-motions for summary judgment.

## I. Undisputed Facts

The parties submitted separate statements of undisputed material facts pursuant to USCIT Rules 56(c)(1)(A) and 56.3(a). See Def. Harvic's Statement of Mat. Facts not in Dispute Pursuant to USCIT Rule 56.3 ("DSOF"), ECF No. 57-8; Pl.'s Resp. to Def.'s Rule 56.3 Statement ("Pl.'s Resp. to DSOF"), ECF No. 72; Pl.'s Statement of Mat. Facts not in Dispute Pursuant to USCIT Rule 56.3 ("PSOF"), ECF No. 65; Def. Harvic's Resp. to Pl.'s Rule 56.3 Statement ("Def.'s Resp. to PSOF"), ECF No. 76. Pursuant to USCIT Rule 56(e)(2) "[i]f a party fails to properly . . . address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." The following material facts are not genuinely in dispute.

In November 2005, the United States and China executed a Memorandum of Understanding ("MOU") regarding trade in textile and apparel products. PSOF ¶ 36; Def.'s Resp. to PSOF ¶ 36. That MOU established quotas for certain cotton, wool, man-made

fiber, silk blend, and other vegetable fiber textiles and textile products produced or manufactured in China and exported to the United States from January 1, 2006 through December 31, 2008. PSOF ¶ 36; Def.'s Resp. to PSOF ¶ 36. As to imports during that period, U.S. Customs and Border Protection ("Customs" or "CBP") knew that there were illegal transshipments of Chinese textiles and textile apparel into the United States and developed a methodology to identify and "back-track" those illegal shipments. PSOF ¶¶ 37, 43; Def.'s Resp. to PSOF ¶¶ 37, 43. Because of concerns over violations of the MOU, CBP investigated these illegal transshipments. PSOF ¶ 38; Def.'s Resp. to PSOF ¶ 38.

Between January 2006 and September 2007, Harvic made 57 entries of the subject merchandise valued at $4,050,429.00 (the "subject entries"). PSOF ¶¶ 23–24, 35; Def.'s Resp. to PSOF ¶¶ 23–24, 35. The subject entries were transported to the United States by shipping companies Hanjin Shipping Company ("Hanjin") and Hyundai Merchant Marine Co. Ltd. ("Hyundai"). PSOF ¶ 61; Def.'s Resp. to PSOF ¶ 61. Harvic filed entry documentation indicating that the subject merchandise originated in Bangladesh, the Philippines, or Korea. DSOF ¶¶ 3–4; Pl.'s Resp. to DSOF ¶¶ 3–4. Specifically, Harvic declared the Philippines as the country of origin for 38 of the 57 subject entries, Bangladesh for 18 entries, and Korea for one entry. PSOF ¶ 24; Def.'s Resp. to PSOF ¶ 24.

As part of its investigation, CBP requested bills of lading and other documents from numerous shipping companies, including Hanjin and Hyundai, for thousands of shipments of textile goods that entered the United States between 2006 and 2010. PSOF ¶¶ 46, 47;

Def.'s Resp. to PSOF ¶¶ 46, 47. Among the many documents obtained, CBP received bills of lading from Hanjin and Hyundai (the "Hanjin/Hyundai bills of lading") that appear to correspond to the subject entries. PSOF ¶ 61; Def.'s Resp. to PSOF ¶ 61. The Hanjin/Hyundai bills of lading reflect the movement of sealed containers of subject merchandise that were loaded onto vessels in ports in China, shipped to ports in third countries, loaded onto other vessels in those third countries, and then shipped to the United States.[2]  PSOF ¶ 58; Def.'s Resp. to PSOF ¶ 58; see also CBP Oct. 9, 2009 Transshipment Memorandum, ECF Nos. 66-2 & 66-3.

During its investigation, Customs also sought information from Harvic regarding the subject entries. PSOF ¶ 59; Def.'s Resp. to PSOF ¶ 59. In response, Harvic produced an entry summary, a bill of lading, and a multi-country declaration for each entry (the "Harvic entry documents"). PSOF ¶ 60; Def.'s Resp. to PSOF ¶ 60; see also Harvic International, Ltd. Jan. 26, 2010 Response to Requests for Information, ECF Nos. 66-7, 66-8 & 66-9. These documents identify the subject entries as being produced by various manufacturers in Bangladesh, the Philippines, or Korea. PSOF ¶ 25; Def.'s Resp. to PSOF ¶ 25.

CBP reviewed the Harvic entry documents and compared them to the Hanjin/Hyundai bills of lading. PSOF ¶ 61; Def.'s Resp. to PSOF ¶ 61. The comparison showed that Harvic's documentation did not substantiate its country of origin declarations. PSOF ¶ 62; Def.'s Resp. to PSOF ¶ 62. Consequently, Customs issued a pre-penalty

---

[2] Notwithstanding Harvic's evidentiary objections, the contents of the Hanjin/Hyundai bills of lading are not genuinely in dispute. See USCIT R. 56(e).

notice advising Harvic that CBP was contemplating a penalty in the amount of $1,620,171.60, an amount that represented 40 percent of the dutiable value of the subject merchandise, based upon a culpability level of gross negligence. PSOF ¶ 68; Def.'s Resp. to PSOF ¶ 68. Harvic responded to the pre-penalty notice. PSOF ¶ 69; Def.'s Resp. to PSOF ¶ 69. CBP then issued a notice of penalty to Harvic for violations of 19 U.S.C. § 1592, alleging a culpability level of negligence and assessing a penalty in the amount of $405,042.90, which represented 10 percent of the dutiable value of the subject merchandise. PSOF ¶ 70; Def.'s Resp. to PSOF ¶ 70.

Harvic submitted a petition in response to the penalty notice, but Customs declined to mitigate the penalty. PSOF ¶¶ 71, 72; Def.'s Resp. to PSOF ¶¶ 71, 72. Subsequently, CBP sent several demands to Harvic for payment of the $405,042.90 penalty. PSOF ¶¶ 73–74; Def.'s Resp. to PSOF ¶¶ 73–74. To date, Harvic has not paid any of the penalty demanded by CBP. PSOF ¶ 75; Def.'s Resp. to PSOF ¶ 75. In December 2016, the Government commenced this enforcement action, seeking a civil penalty of $405,042.90, plus interest and costs. Compl. ¶¶ 28–29.

## II.  Standard of Review

The U.S. Court of International Trade reviews all issues in actions brought for the recovery of a monetary penalty under 19 U.S.C. § 1592 de novo, including the amount of any penalty. 19 U.S.C. § 1592(e)(1); see also United States v. ITT Indus., Inc., 28 CIT 1028, 1034–35, 343 F. Supp. 2d 1322, 1329 (2004), aff'd, 168 F. App'x 942 (Fed. Cir. 2006). USCIT Rule 56 permits summary judgment when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." USCIT

R. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). In considering whether material facts are in dispute, the evidence must be considered in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor. See Anderson, 477 U.S. at 261 n.2; Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). On materiality, "the substantive law will identify which facts are material." Anderson, 744 U.S. at 248. "Where, as here, parties cross-move for summary judgment, each party carries the burden on its own motion to show entitlement to judgment as a matter of law after demonstrating the absence of any genuine disputes over material facts." Suntec Indus. Co. v. United States, 40 CIT ___, 2016 WL 1621088, at *2 (Apr. 21, 2016) (internal quotation marks and citations omitted), aff'd, 857 F.3d 1363 (Fed. Cir. 2017).

## III.  Discussion

### A.    Harvic's Motion for Summary Judgment

Under 19 U.S.C. § 1592(a), "no person, by ... negligence[,] ... may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of ... any document or electronically transmitted data or information, written or oral statement, or act which is material and false." 19 U.S.C. § 1592(a)(1). A document, statement, or act is material if it has the potential to interfere with the administration of a quantitative limitation, i.e., a quota. United States v. Inner Beauty Int'l (USA) Ltd., 35 CIT 1693, 1697 (2011) (citing United States v. Rockwell Int'l Corp., 10 CIT 38, 42, 628 F. Supp. 206, 210 (1986) (holding false statement of country of origin to be material); 19 C.F.R. Part 171, App. B § (B) ("A document, statement, act, or omission is material if it

has the natural tendency to influence or is capable of influencing agency action including … [d]etermination of the classification, appraisement, or admissibility of merchandise….")). In an enforcement action where the monetary penalty is based on negligence, "the United States [has] the burden of proof to establish the act or omission constituting the violation [of § 1592(a)], and the alleged violator shall have the burden of proof that the act or omission did not occur as a result of negligence." 19 U.S.C. § 1592(e)(4).

Harvic contends that the Government has not and cannot meet its statutory burden of proof under 19 U.S.C. § 1592(a). See Def.'s MSJ at 8. Harvic maintains that the Government has no admissible evidence to show that the subject entries originated in China. See Def.'s MSJ at 2, 8–10. Although Harvic acknowledges that the disputed Hanjin/Hyundai bills of lading constitute "evidence . . . to support the specific allegation that the 57 specific entries of wearing apparel originated in China[,]" Harvic argues that the Hanjin/Hyundai bills of lading are inadmissible hearsay and that the Government has no other evidence to support its claim. Def.'s MSJ at 9.

Hearsay is an out of court statement offered "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay generally cannot be considered on a motion for summary judgment, unless a federal statute, the Federal Rules of Evidence, or other rule prescribed by the Supreme Court provides otherwise. See Fed. R. Evid. 802. "[F]or summary judgment purposes, the inquiry is whether the cited evidence may be reduced to admissible form, not whether it is admissible in the form

submitted at the summary judgment stage." United States v. Univar USA Inc., 42 CIT

___, 355 F. Supp. 3d 1225, 1236 (2018) (internal citation and quotation marks omitted).

The Government does not dispute Harvic's contention that the Hanjin/Hyundai bills

of lading are hearsay, i.e., they contain out of court statements submitted as evidence to

establish that the subject entries originated in China. See Def.'s MSJ at 19–20. However,

the Government maintains that the Hanjin/Hyundai bills of lading fall under a hearsay

exception for "records of a regularly conducted business activity." Id. at 21–22 (citing

Fed. R. Evid. 803(6) ("Rule 803(6)")). Rule 803(6) provides:

> **(6) Records of Regularly Conducted Activity.** A record of an act, event, condition, opinion, or diagnosis if:
>
> **(A)** the record was made at or near the time by — or from information transmitted by — someone with knowledge;
>
> **(B)** the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> **(C)** making the record was a regular practice of that activity;
>
> **(D)** all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> **(E)** the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). "It is well-established that the business records exception has been

construed generously in favor of admissibility." Home Depot, U.S.A., Inc. v. United States,

30 CIT 445, 454, 427 F. Supp. 2d 1278, 1288 (2006) (citation omitted), aff'd, 491 F.3d 1334 (Fed. Cir. 2007).

The Government argues that "although [the Hanjin/Hyundai] bills of lading are third-party documents, and the shipping companies are not parties to this action, such documents are CBP business records and fall within the business records exception to the prohibition against hearsay." Pl.'s XMSJ at 13. Specifically, the Government maintains that it has laid the foundation for the Hanjin/Hyundai bills of lading pursuant to Rule 803(6) and the incorporation doctrine. See id. at 22–27 (arguing that Hanjin/Hyundai bills of lading are admissible hearsay pursuant to Rule 803(6) and incorporation doctrine of Air Land Forwarders, Inc. v. United States, 172 F.3d 1338, 1343 (Fed. Cir. 1999)). Harvic disputes the Government's reliance on Air Land Forwarders, contending that the incorporation doctrine does not apply to law enforcement files or law enforcement investigations that lead to civil penalties, and that the Government has failed to obtain a certification from a qualifying witness pursuant to Rule 803(6)(D). See Def.'s Reply at 11-19.

The incorporation doctrine allows documents generated by a third-party to be admitted if: (a) the proffering entity incorporated the records of another entity into its own; (b) the proffering entity relied upon those records in its day-to-day operations; (c) there are other circumstances indicating the trustworthiness of the document; (d) the sponsoring witness from the proffering entity is familiar with the relevant procedures used by the entity that prepared the records in question; and (e) other requirements of the

business records exception are satisfied, i.e., Rule 803(6)(A)–(C). Air Land Forwarders,

172 F.3d at 1343–44.

To demonstrate that the Hanjin/Hyundai bills of lading meet the Air Land

Forwarders test, the Government relies on two declarations attached to its cross-motion

for summary judgment. See Decl. of Brian F. Fennessy, ECF No. 66-1 ("Fennessy Decl.");

Decl. of Judy Linh Staudt, ECF No. 66-4 ("Staudt Decl.").[3] Mr. Fennessy, as the Branch

Chief of the Textile Enforcement and Operations Division of CBP from 2004–2010,

describes how CBP requested, obtained, and relied upon information from shipping

companies, including Hanjin and Hyundai, in its efforts to combat illegal transshipments

of Chinese textiles and textile apparel. See generally Fennessy Decl. Ms. Staudt,

a Supervisory Import Specialist at CBP responsible for textiles and textile apparel from

2006–2011, also details how CBP regularly gathers, maintains, and reviews entry records

and documents including bills of lading. See generally Staudt Decl. Notably, Harvic does

not provide any argument as to why the Hanjin/Hyundai bills of lading would not qualify

---

[3] In its opening brief, Harvic argues that "the business records exception cannot save the Government here" because "the Government has not disclosed any person who" can lay a sufficient foundation for the admission of the bills of lading, and "it is far too late" for the Government to now identify such a person. Def.'s MSJ at 9–10. Harvic's contention is at odds with the applicable burden that the Government must meet to survive a motion for summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment…. Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c)…."). USCIT Rule 56 specifically permits the non-moving party to produce certain evidence in order to avoid summary judgment. Harvic fails to identify any authority to support its argument to the contrary. See generally Def.'s MSJ; Def.'s Reply.

for the business records hearsay exception of Rule 803(6) and the incorporation doctrine under Air Land Forwarders. See generally Def.'s Reply.

Addressing the incorporation factor of Air Land Forwarders, the Government demonstrates that Customs received information and documents from shipping companies that assisted Customs in combating illegal transshipments of Chinese textiles and textile apparel. Fennessy Decl. ¶¶ 12,14. The Government also shows that Customs routinely obtains bills of lading from private shipping companies, such as Hanjin and Hyundai. Staudt Decl. ¶¶ 30–31. These private shipping companies transmit manifest data, including bills of lading numbers, to Customs prior to entry, which Customs incorporates into its records. Id. at ¶¶ 30–32.

As to the reliance factor, the Government submits that Customs relied on the information, including bills of lading, obtained from shipping companies in its regular operations. See Fennessy Decl. ¶¶ 10–16, 22–26. Additionally, the Government confirms that Customs routinely examined records, such as shipping company bills of lading, in its administration of trade laws and that the accuracy of this information is important because it can impact revenue and trade policy. See Staudt Decl. ¶¶ 26–27.

Regarding the trustworthiness factor, Hanjin and Hyundai provided Customs with access to their electronic databases from which Customs obtained the Hanjin/Hyundai bills of lading. Fennessy Decl. ¶¶ 31–37. The Hanjin/Hyundai bills of lading contained information corresponding to the subject entries, including substantially the same information regarding the cargo count, weight, measurement, and description as that provided in Harvic's entry documents. Id. Additionally, by law, carriers and shipping

companies are required to maintain their CBP records and entry documents for five years from the entry, and these records must be capable of being retrieved upon lawful request or demand by CBP. See Staudt Decl. ¶¶ 17–26; see also Lewis v. Baker, 526 F.2d 470, 473–74 (2d Cir. 1975) (noting fact that monthly accident reports were prepared pursuant to federal regulatory requirement provided indicia of reliability and supported admissibility, stating, "[i]t would ill become a court to say that the regular making of reports required by law is not in the regular course of business." (internal citation and quotation marks omitted)).

As to the sponsoring witness factor, "[c]ourts have made clear… that the 'custodian or other qualified witness' who must authenticate business records need not be the person who prepared or maintained the records, or even an employee of the record-keeping entity, as long as the witness understands the system used to prepare the records." Conoco Inc. v. Dep't of Energy, 99 F.3d 387, 391 (Fed. Cir. 1996), as amended on reh'g in part (Jan. 2, 1997) (aggregating cases). Furthermore, under Rule 803(6) a government employee may provide a foundation for a third-party document when that employee is familiar with the underlying record-keeping system. See Air Land Forwarders, 172 F.3d at 1344; see also United States v. Collado, 439 F. App'x. 845, 848 (11th Cir. 2011) ("Nor is it required that the records be prepared by the business which has custody of them." (internal citation and quotation marks omitted)).

Mr. Fennessy is a Customs supervisory field operations specialist with approximately 31 years of experience working with trade and import laws. See Fennessy Decl. ¶¶ 1–7. Mr. Fennessy declares that in his work as CBP's Branch Chief for Textile

Policy in the Textile Enforcement and Operations Division from 2004–2010, it was his "regular practice in the Textile Policy branch to obtain, review, and rely upon information and documents from foreign governments, industry advisors, freight forwarders, shipping companies, and others to determine whether shipments of textiles and apparel had been or were being entered into the United States in contravention of quotas and other customs laws." Id. at ¶ 10. Specifically, Mr. Fennessy states that he requested thousands of bills of lading and other records, including the Hanjin/Hyundai bills of lading, as part of his office's "systematic examinations and research related to illegal transshipments of textiles and apparel." Id. at ¶¶ 10, 31–42. Mr. Fennessy details his extensive experience and training that demonstrates that he is able to evaluate the veracity of questionable entry documents, including bills of lading. See id. at ¶¶ 14–25; cf. Air Land Forwarders, 172 F.3d at 1344–45 (finding that government witness provided adequate foundation for admission of third-party repair estimates by testifying that "Military Claims Office personnel were responsible for becoming familiar with the competency of estimators in the local area and the estimating process in general, thus enabling them to reject questionable estimates.").

        As to the final factor, it is undisputed that the Hanjin/Hyundai bills of lading satisfy the requirements of Rule 803(6)(A)–(C). Hanjin and Hyundai created the Hanjin/Hyundai bills of lading to facilitate the shipment of the subject entries from abroad to the United States. PSOF ¶ 61; Def.'s Resp. to PSOF ¶ 61; Staudt Decl. ¶ 32; Fennessy Decl. ¶¶ 31-38; see Fed. R. Evid. 803(6)(A). Further, as shippers of goods to the United States, Hanjin and Hyundai kept the Hanjin/Hyundai bills of lading in the course of their regular

business. <u>See</u> Fennessy Decl. ¶¶ 23, 31–38; Staudt Decl. ¶¶ 17–26. It was the regular practice of Hyundai and Hanjin to make bills of lading, including the Hanjin/Hyundai bills of lading. <u>See</u> Staudt Decl. ¶¶ 9–27, 32; <u>see also</u> Fennessy Decl. ¶ 23.

 The court notes that Harvic failed to rebut the Fennessy and Staudt declarations. The court therefore concludes that the Government has shown that Customs incorporated entry documents, including the Hanjin/Hyundai bills of lading, into its own records and relied on those records in its day-to-day administration of customs laws and policies. The Fennessy and Staudt declarations further show that Hanjin/Hyundai bills of lading have indicia of reliability and trustworthiness and otherwise satisfy the requirements of Rule 803(6)(A)–(C). Accordingly, the court agrees that the Hanjin/Hyundai bills of lading may be reduced to admissible form pursuant to Rule 803(6) and <u>Air Land Forwarders</u>.

 Rather than respond to Plaintiff's arguments on the <u>Air Land Forwarders</u> test, Harvic contends that the incorporation doctrine is wholly inapplicable here. Harvic maintains that "<u>Air Land Forwarders</u> is not so broad as to permit the Government to admit as CBP business records documents collected in a law enforcement investigation." Def.'s Reply at 11–14. Harvic argues that in <u>Air Land Forwarders</u> the U.S. Court of Appeals for the Federal Circuit explained that "its holding did not support a broad theory that information and documents collected by a law enforcement agency in an investigation were somehow admissible as business records of the law enforcement agency." <u>See</u> Def.'s Reply at 13.

 Harvic misconstrues the holding in <u>Air Land Forwarders</u>. The Federal Circuit did <u>not</u> hold that documents collected by a law enforcement agency investigating illegal

activity fall can never qualify for admissibility under the incorporation doctrine of the business records exception. See Air Land Forwarders, 172 F.3d at 1344 (explaining why incorporation doctrine would not broadly apply to all law enforcement records used in criminal prosecutions because law enforcement records prepared "for the purpose of prosecuting a criminal defendant … lack the other assurances of credibility and trustworthiness that our holding requires for admissibility of incorporated documents prepared by third parties."). Rather, as explained above, the court in Air Land Forwarders held that records prepared by a third-party may be introduced as excepted hearsay under Rule 803(6) "where an organization incorporated the records of another entity into its own, relied upon those records in its day-to-day operations, and where there are other strong indicia of reliability." Id.

    Here, the Hanjin/Hyundai bills of lading were created by private shipping companies that transported the subject entries to the United States. Therefore, like the third-party records in Air Land Forwarders, the bills of lading were created by disinterested private third-parties in the routine course of their business—not by unidentified sources or law enforcement agents in furtherance of a criminal investigation. See PSOF ¶ 61; Def.'s Resp. to PSOF ¶ 61; cf. Air Land Forwarders, 172 F.3d at 1344 (rejecting hypothetical admissibility of documents from unidentified sources collected in course of criminal investigation).

    Harvic also argues that the Hanjin/Hyundai bills of lading are inadmissible because they are "documents collected by a law enforcement agency[, which] are collected for the purposes of prosecution or litigation." Def.'s Reply at 13. Harvic's "undue focus on the law

enforcement purpose of the records has little to do with whether they are business records under the Federal Rules of Evidence. What matters is that they were kept in the ordinary course of business." United States v. Towns, 718 F.3d 404, 408 (5th Cir. 2013). Significantly, Harvic does not dispute that Hanjin and Hyundai regularly maintained the records at issue, as required by applicable customs laws, nor does Harvic identify any specific facts that indicate that the Hanjin/Hyundai bills of lading are not trustworthy. See generally Def.'s Reply.

It is undisputed that the Hanjin/Hyundai bills of lading were created by Hanjin and Hyundai in a routine, non-adversarial setting, and were requested by Customs as part of its investigation into the circumvention of the MOU. It is also clear that the bills of lading were not prepared for the purpose of litigation. Customs did not request that Hanjin and Hyundai prepare the bills of lading in furtherance of a targeted investigation into Harvic or the subject entries. To the contrary, Customs requested various records from numerous sources, including shipping companies, as part of its overall examinations and research related to illegal transshipments of textiles and apparel. See Fennessy Decl. ¶ 10. Harvic's argument fails to appreciate the distinction between documents created by law enforcement for the purpose of prosecuting a specific defendant, and third-party documents integrated into law enforcement records as part of that agency's routine practice and administration of the law. Compare United States v. Bohrer, 807 F.2d 159, 162–63 (10th Cir.1986) (Internal Revenue Service ("IRS") contact card, which contained IRS agent's version of alleged telephone conversation with defendant, deemed inadmissible as business record of IRS in prosecution for failure to file income tax returns

because card was maintained for purpose of prosecuting defendant), with United States v. Veytia-Bravo, 603 F.2d 1187 (5th Cir. 1979) (finding that trial court properly admitted records of defunct firearm dealer authenticated by agent of Bureau of Alcohol, Tobacco, and Firearms ("ATF") given that government regulations provide that when firearms dealer goes out of business, all records are to be forwarded to ATF for storage).

Nevertheless, Harvic maintains that the bills of lading should be excluded because Customs' collection of these documents "presents a situation dripping with 'motivations to misrepresent.'"  Def.'s Reply at 15 (quoting Air Land Forwarders, 172 F.3d at 1344). This phrase, which originated in Hoffman v. Palmer, 129 F.2d 976, 991 (2d Cir. 1942), is not applicable to the Hanjin/Hyundai bills of lading. In affirming the Second Circuit, the Supreme Court stated that certain accident reports, prepared by a railroad locomotive engineer for the purpose of litigation, did not fall within the business records exception because they were not kept in the course of regularly conducted business. Palmer v. Hoffman, 318 U.S. 109, 113–14 (1943). The Supreme Court, evaluating a predecessor to Rule 803(6), explained that "[u]nlike payrolls, accounts receivable, accounts payable, bills of lading and the like, these [accident] reports are calculated for use essentially in the court, not in the business. Their primary utility is in litigating, not in railroading." Id. at 114 (emphasis added). Contrary to Harvic's argument, the Supreme Court expressly recognized bills of lading as documents that are inherent to the nature of the business of shipping, not litigation. Id. at 114–15. Accordingly, Harvic's contention that incorporation of the bills of lading into CBP's records involves "motivations to misrepresent" is meritless.

Next, Harvic relies on United States v. Modes, Inc., 16 CIT 189, 787 F. Supp. 1466 (1992), for the proposition that Air Land Forwarders does not apply to law enforcement investigations that lead to civil penalties. See Def.'s Reply at 15–16. In Modes, the court found that a § 1592 civil penalty case was "quasi-criminal" in nature, and thus, subject to the exclusionary rule. See Modes, 16 CIT at 191–94, 787 F. Supp. at 1469–72 (adjudicating motion to suppress evidence seized from defendants' attorney's briefcase by customs agents during a border search at an international airport). Modes did not address the business records exception, and this action does not involve any Fourth Amendment or exclusionary rule issues. Here, unlike the unconstitutional briefcase seizure in Modes, Customs obtained the bills of lading from cooperative third-party shipping companies pursuant to its unchallenged statutory authority. See PSOF ¶¶ 40, 43; Def.'s Resp. to PSOF ¶¶ 40, 43; see also Staudt Decl. ¶¶ 17–26. Accordingly, Harvic's reliance on Modes is misplaced.

Finally, Harvic contends that the Government did not present a certification from a qualified witness "needed for a true business record" to be admissible under Rule 803(6). Def.'s Reply at 15–16. Aside from referencing Rule 803(6) generally, Harvic does not cite any authority for its proposed admissibility requirement. Id. Courts have made clear … that the 'custodian or other qualified witness' who must authenticate business records need not be the person who prepared or maintained the records, or even an employee of the record-keeping entity, as long as the witness understands the system used to prepare the records." Conoco Inc., 99 F.3d at 391. At summary judgment, a declaration from such an "other qualified witness" will suffice. See USCIT R. 56(c)(4); Fed. R. Evid. 902(11)

advisory committee's note. Harvic's argument ignores the fundamental premise of the incorporation doctrine—"'[e]ven if the document is originally created by another entity, its creator need not testify when the document has been incorporated into the business records of the testifying entity.'" <u>Air Land Forwarders</u>, 172 F.3d at 1343 (quoting <u>United States v. Jakobetz</u>, 955 F.2d 786, 801 (2d Cir.1992)). As discussed above, the Government's submissions, including the Fennessy and Staudt declarations, satisfy the <u>Air Land Forwarders</u> test and the remaining requirements of Rule 803(6) for purposes of evaluating Harvic's cross-motion for summary judgment. Therefore, Harvic's argument is unpersuasive.

In sum, Harvic does not provide any argument as to why the bills of lading would not qualify for the business records hearsay exception of Rule 803(6) or satisfy the incorporation doctrine of <u>Air Land Forwarders</u>. <u>See</u> <u>generally</u> Def.'s Reply. Instead, Harvic maintains that <u>Air Land Forwarders</u> does not apply in the context of law enforcement and penalty actions and therefore cannot aid the Government in establishing the admissibility of the bills of lading in this matter. The court agrees with the Government that the Hanjin/Hyundai bills of lading "may be reduced to admissible form" by the time of trial pursuant to Rule 803(6) and the incorporation doctrine. Pl.'s XMSJ at 20. As a result, the court concludes that Harvic cannot prevail on its motion for summary judgment and that Defendant's motion must be denied.

## B.    Plaintiff's Motion for Summary Judgment

The Government seeks a civil penalty for a non-revenue-loss violation of § 1592(c)(3)(B) because Harvic allegedly misidentified the subject entries' respective

countries of origin as Bangladesh, the Philippines, or Korea, instead of the "true" country of origin, China. See Pl.'s XMSJ at 28–30; see also Compl. ¶ 7. As the moving party, the Government bears the burden of demonstrating the absence of any genuine issue of material fact. See Celotex, 477 U.S. at 322–23.

Unfortunately for the Government there is conflicting evidence on the record about the origin of the subject entries that precludes entry of summary judgment in favor of the Government. To explain further, on the one hand, Harvic argues that the entry information and documents it submitted to CBP identifies either Bangladesh, the Philippines, or Korea as the subject entries' respective countries of origin. See Def.'s Reply at 20, 24–26. On the other hand, the Government contends that the Hanjin/Hyundai bills of lading reveal that the true country of origin of the subject entries was China. See Pl.'s XMSJ at 29. The court therefore must resolve the discrepancy between the country of origin as identified in Harvic's import documentation and the country of origin as identified in the Hanjin/Hyundai bills of lading.

In making such a determination the court would need "to weigh evidence, make credibility determinations, and draw inferences from the facts, functions strictly delegated to a fact-finder or jury." United States v. ITT Indus., Inc., 28 CIT 1028, 343 F. Supp. 2d 1322, 1344 (2004), aff'd, 168 F. App'x 942 (Fed. Cir. 2006). As the court cannot properly perform these functions on summary judgment, the Government's motion for summary judgment is denied.

## IV.  Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's motion for summary judgment and Plaintiff's cross-motion are denied; and it is further

**ORDERED** that the parties shall submit a proposed scheduling order that includes (1) a date for submission of the order governing preparation for trial, (2) a date for the submission of the pretrial order, (3) a date for the pretrial conference, and (4) a proposed trial date on or before January 17, 2020.

/s/ Leo M. Gordon
Judge Leo M. Gordon

Dated:  January 3, 2020
New York, New York